UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
IN ADMIRALTY

2007 MAR 12 AM 11:06

CLARENCE
CLERK U.S. DIST. CT.
S.D. OF FL. - MIAMI

CASE NO.

MARGARET WILCOX

    Plaintiff,

v.

Carnival Corporation dba
Carnival Cruise Lines,

    Defendant

_____/

07-20642
CIV - HUCK

MAGISTRATE JUDGE
SIMONTON

COMPLAINT AND REQUEST FOR JURY TRIAL

Plaintiff sues Defendant and alleges:

### I. PRELIMINARY ALLEGATIONS

1. This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears. This is an admiralty or maritime claim within the meaning of Rule 9(h).

2. Defendant, at all times material hereto, personally or through an agent;

a. Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

b. Was engaged in substantial activity within this state;

c. Operated vessels in the waters of this state;

d. Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

e. The acts of Defendant set out in this Complaint occurred in whole or in part in this county and/or state.

f. The defendant was engaged in the business of providing to the public and to the plaintiff in particular, for compensation, vacation cruises aboard their vessel.

3. Defendant is subject to the jurisdiction of the Courts of this state.

4. The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

5. At all times material hereto, Defendant owned, operated, managed, maintained and/or controlled the vessel INSPIRATION.

6. On or about October 14, 2006, Plaintiff was a paying passenger on defendant's vessel which was in navigable waters. A copy of plaintiff's ticket is attached as an exhibit.

### COUNT I - NEGLIGENCE FOR SEXUAL ASSAULT

7. Plaintiff realleges, incorporates by reference, and adopts her allegations set forth in paragraphs one through six as though alleged originally herein.

8. It was the unconditional and non-delegable duty of Defendant to exercise reasonable care under the circumstances for Plaintiff's safety and the safety of its passengers.

9. On or about the above date, Plaintiff was injured and sexually assaulted due to the fault and negligence of Defendant, and/or its agents, servants, and/or employees as follows:

    a.    Failing to provide reasonably safe conditions for the Plaintiff aboard Defendant's vessel. Said safe conditions included but are not limited to the prevention of an atmosphere to exist wherein crew members could sexually assault passengers;

    b.    Failed to undertake reasonable investigation of the offending crew

member's backgrounds, criminal records, and employment history prior to hiring the crew member;

c. Negligently hired a crew member who Defendant knew or should have known was a danger to female passengers;

d. Continued to employ and retain as a crew member a person who Defendant knew or should have known posed a dangerous threat to the passengers, especially female passengers, including the Plaintiff;

e. Failed to adequately monitor and control the conduct of their crew members / employees;

f. Failed to protect their passengers from sexual assaults, and physical batteries, by Defendant's crew members / employees;

g. Failed to provide adequate training for their crew members / employees in regard to interactions with passengers;

h. Failed to adequately warn passengers of the dangers of its crew members / employees;

i. Failed to adequately monitor passengers so as to keep them away from dangerous crew members / employees and/or dangerous situations;

j. At all times material hereto, Defendant negligently failed to determine the hazards on the vessel to plaintiff of a sexual assault by a crewmember, failed to eliminate the hazard, failed to modify the hazard and failed to properly warn plaintiff of the hazard. In addition, Defendant violated the International Safety Management Code and failed to have a proper, adequate and safe Safety Management System Manual. All of the above

caused the plaintiff to be sexually assaulted and injured.

10. As a direct and proximate result of the negligence of Defendant, the Plaintiff was directly and proximately caused to be sexually assaulted and/or physically battered by by one of Defendant's crew members.

11. As a direct and proximate result of Defendant's negligence as set forth above, the Plaintiff has suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, incurred medical and psychological treatment, and aggravation of a previously existing condition. The losses are either permanent or continuing and the Plaintiff will suffer the losses in the future. In addition, plaintiff lost the benefit of plaintiff's vacation, cruise, and transportation costs.

Wherefore, the plaintiff demands judgment against the Defendant and requests trial by jury.

**COUNT II - VICARIOUS LIABILITY FOR SEXUAL ASSAULT AND BATTERY**

12. Plaintiff realleges, incorporates by reference, and adopts her allegations set forth in paragraphs one through eleven as though alleged originally herein.

13. At all times material, the crew member that sexually assaulted and battered the Plaintiff was hired and retained by, as well as in the employ of, Defendant for service as a crew member during said voyage.

14. At all times material, Defendant was and is vicariously and strictly liable for the tortious actions of its crew member towards the plaintiff.

15. As a direct and proximate result of the tortious actions of the Defendant's crewmember as set forth above, the Plaintiff has suffered significant bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, incurred medical treatment, and aggravation of a pre-existing condition.  The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.  In addition, plaintiff lost the benefit of plaintiff's vacation, cruise, and transportation costs.

Wherefore, the plaintiff demands judgment against the Defendant and requests trial by jury.

>LIPCON, MARGULIES & ALSINA, P.A.
Attorneys for Plaintiff
Suite 2480, One Biscayne Tower
Miami, Florida 33131
Telephone: (305) 373-3016
Email: sealaw@aol.com

By _____
CHARLES R. LIPCON
Florida Bar # 137942

# Carnival

## Cruise Ticket — Guest COPY

**Booking Number:** 7JS752
**Group Name:** LG+ PLAYFUL GRO
**Sailing Date:** INSPIRATION 10/14/06
**Cabin Number:** U105

**Guests:** MS    MARGARET WILCOX

### ITEMIZED CHARGES

| | |
|---|---|
| Cruise Amount | As Agreed |
| Air Supplement | As Agreed |
| Packages/Transfers | As Agreed |
| Prepaid Gratuities | As Agreed |
| Deviation Fees | As Agreed |
| Administration Fees | As Agreed |
| Federal Taxes/Fees | As Agreed |
| Airport Fees | As Agreed |
| Vacation Protection | As Agreed |
| Total | As Agreed |

*OCT 1 2006*

### IMPORTANT NOTICE TO GUESTS

THIS DOCUMENT IS A LEGALLY BINDING CONTRACT ISSUED BY CARNIVAL CRUISE LINES TO, AND ACCEPTED BY, GUEST SUBJECT TO THE IMPORTANT TERMS AND CONDITIONS APPEARING ON THE FOLLOWING 11 PAGES. THE PROVISIONS ON THE FOLLOWING PAGES OF THIS CONTRACT ARE INCORPORATED AS THOUGH FULLY REWRITTEN ON THE FACE OF THIS CONTRACT. NOTICE: THE ATTENTION OF GUEST IS ESPECIALLY DIRECTED TO CLAUSES 1 AND 13 THROUGH 17, WHICH CONTAIN IMPORTANT LIMITATIONS ON THE RIGHTS OF GUESTS TO ASSERT CLAIMS AGAINST CARNIVAL CRUISE LINES, THE VESSEL, THEIR AGENTS AND EMPLOYEES, AND OTHERS.

**Contract: Page 1**

CCL 6/27/02

## Carnival

**IMPORTANT TERMS AND CONDITIONS OF CONTRACT - READ CAREFULLY**

In consideration of the receipt of the full cruise fare, Carnival Cruise Lines ("Carnival") agrees to transport Guest on the above - specified voyage on the following terms and conditions:

1. (a) Whenever the word "Carnival" is used in this Contract it shall mean and include, the Vessel, its owners, operators, employees, agents, charterers and tenders. The term "Guest" shall include the plural where appropriate, and all persons or entities booking or purchasing passage and/or traveling under this Contract, including heirs, representatives and any accompanying minors. The masculine includes the feminine. "Guest" shall have the same meaning as "Passenger" in this Contract.

   (b) "Cruise Fare" or "Fare" means the amount paid for cruise plus any air travel to or from the vessel at the beginning or end of the cruise, if arranged by Carnival. The fare includes full board, ordinary ship's food during the voyage, but not spirits, wine, beer, soft drinks or mineral waters, or any other incidental charge or expense. The cruise fare shall be deemed to be earned when paid and not refundable except as stated in Carnival's brochure applicable to the voyage and as provided in paragraph 8, herein.

   (c) Cruise Fare does not include Government taxes and fees imposed or sanctioned by the U.S. Government or other Governments. These charges are in addition to the Cruise Fare and include but are not limited to, Passenger Facility Charges, Security Surcharges, Fuel Surcharges, International Passenger Departure or Arrival Tax, Customs User Fee, Immigration Fee and Agricultural Inspection Fee.

   (d) This ticket is valid only for the person(s) named hereon as Guests and cannot be transferred or modified without Carnival's written consent. The acceptance or use of this ticket by the person(s) named hereon as Guests shall be deemed acceptance and agreement by each of them to all of the terms and conditions of this Passage Contract.

   (e) All rights, exemptions from liability, defenses and immunities of Carnival under this contract shall also inure to the benefit of Carnival's facilities, whether at sea or ashore, servants, agents, managers, affiliated or related companies, suppliers, shipbuilders and manufacturers of component parts and independent contractors, including, but not limited to, shore excursion or tour operators, ship's physician, ship's nurse, retail shop personnel, health and beauty staff, fitness staff, video diary staff, and other concessionaires, who shall have no liability to the Guest, either in contract or in tort, which is greater than or different from that of Carnival.

2. (a) The Guest admits a full understanding of the character of the Vessel and assumes all risks incident to travel and transportation and handling of Guests and cargo. The Vessel may or may not carry a ship's physician or other medical personnel at the election of Carnival. While at sea or in port the availability of medical care may be limited or delayed. Guest acknowledges that all or part of their voyage may be in

areas where medical care and evacuation may not be available. Guest agrees to indemnify and reimburse Carnival in the event Carnival elects to advance the cost of emergency medical care, including medical care provided ashore as well as transportation and/or lodging in connection therewith.

(b) Carnival's vessels visit numerous ports in a number of countries. Guests assume responsibility for their own safety and Carnival cannot guarantee Guest's safety at any time. The United States Department of State, Centers for Disease Control and Prevention and other governmental and tourist organizations regularly issue advisories and warnings to travelers and Carnival strongly recommends Guests obtain and consider such information when making travel decisions. Carnival assumes no responsibility for gathering said information. The Guest acknowledges that the cruise may be booked in a location that is susceptible to severe weather systems, including but not limited to, hurricanes, tropical storms and depressions, and that Carnival reserves the right to alter the ship's course, ports of call, itinerary, activity and shore excursions to avoid such weather systems and insure the comfort and safety of the Guest and crew.

(c) Proper travel documentation is required at embarkation and throughout the cruise. It is the guest's sole responsibility to bring and have available at all times all required travel documents. Guests are advised to check with their travel agent or the appropriate government authority to determine the necessary documents. Any guest traveling without proper documentation will not be allowed to board the vessel and no refund of the cruise fare will be issued.

(d) Guest acknowledges receipt of Carnival's applicable brochure and "Welcome Aboard" booklet. Guest agrees to abide by the terms and conditions of Carnival's brochure and "Welcome Aboard" booklet.

(e) Guest acknowledges that, for a voyage commencing in a United States port for a round-trip voyage via one or more United States ports, Guest must complete the voyage and disembark at the embarkation port. Failure to do so may result in a fine or penalty being imposed by the United States Customs Service or other governmental agency. In consideration for the fare paid, Guest agrees to pay any such fine or penalty imposed because of Guest's failure to complete the voyage.

(f) Carnival shall refuse boarding to any Guest under the age of twenty-one unless: (1) the Guest is traveling in the same stateroom with an individual twenty-five years or older; (2) traveling in the same stateroom with their spouse; or (3) traveling with a parent or guardian in an accompanying stateroom. Proof of age and/or proof of marriage are required. Carnival shall not be liable to make any refunds or for any damages with respect to any Guest's failure to provide proper proof of age or marriage or otherwise comply with this provision.

3. Any travel agent or sales agent utilized by the Guest in connection with this contract is solely the agent of the Guest and not Carnival. Carnival is not responsible for the financial condition or integrity of any travel agent utilized by Guest. In the event that an agent shall fail to remit to Carnival any monies paid to the agent by Guest, Guest shall be and remain liable for the fare due to Carnival, regardless of whether liability

**Carnival®**

is asserted before or after embarkation. Issuance and validity of ticket contract is conditional upon final payment being received by Carnival prior to sailing. Any refund made by Carnival to an agent on behalf of Guest shall be deemed payment to Guest, regardless whether the monies are delivered by the agent to Guest. Receipt of this ticket contract, any other documentation or notification pertaining to the cruise by Guest's travel agent shall constitute receipt by Guest.

4. (a) Each fully paid adult Guest will be allowed an unlimited amount of baggage free of charge. Baggage means only trunks, valises, satchels, bags, hangers and bundles with their contents consisting of only such wearing apparel, toilet articles and similar personal effects as are necessary and appropriate for the purpose of the journey.

(b) No tools of trade, household goods, presents and/or property of others, jewelry, money, cameras, documents, valuables of any description including but not limited to such articles as are described in Section 4281 Revised Statute of the U.S.A. (46 USC § 181) shall be carried except under and subject to the terms of a special written contract or Bill of Lading entered into with Carnival prior to embarkation upon application of the Guest. The Guest warrants that no such articles are contained in any receptacle or container presented by him as baggage hereunder, and if any such articles are shipped in the Guest's baggage in breach of this warranty, no liability for negligence, gross or ordinary, shall attach to Carnival for any loss or damage thereto.

(c) Carnival shall not be liable for: (1) Guest's failure to comply with the requirements set forth in Clauses 4(a) and 4(b); (2) any loss or damage before baggage comes into Carnival's actual custody on board or after baggage leaves Carnival's actual custody on board, including, but not limited to, loss or damage by airlines or other transportation services; (3) any loss or damage of baggage while not in the actual possession, custody and control of Carnival; (4) damage due to wear, tear or normal usage; (5) any loss or damage of perishable items, medicine, liquor, cash, securities or other financial instruments, or (6) any loss or damage while in the custody and control of stevedores.

(d) It is stipulated and agreed that the aggregate value of Guest's property, does not exceed $50 per guest or bag with a maximum value of $100 per stateroom regardless of the number of occupants or bags and any liability of Carnival for any cause whatsoever with respect to said property shall not exceed such sum, unless the Guest shall in writing, delivered to Carnival, prior to embarkation, declare the true value thereof and pay to Carnival prior to embarkation a sum equal to 5% of the excess of such value. If Carnival shall be held liable for the loss of or damage to Guest's baggage or property it is agreed that such liability shall not exceed the lesser of: (1) the actual cash value, or (2) value declared in the manner above provided (up to U.S. $100 if no such declaration has been made). Declared value amounts to be proportionately reduced in any case where less than all of Guest's baggage or property is lost, delayed or rendered unusable due to damage. In no event shall Carnival be liable to pay any compensation if the nature or value of the property has been misrepresented.

(e) No Guest is permitted, to bring on board the vessel live animals (other than qualified service animals, with not less than 14 days advance notice given to Carnival). Guest will be solely responsible for any and all damage and/or loss caused by service animals.

(f) Weapons, firearms, ammunitions, explosives, incendiary devices, or other dangerous goods are strictly prohibited aboard the vessel. The Guest warrants that no such articles are contained in any receptacle or container carried or presented by him as baggage. Carnival may deny boarding to any Guest travelling with any weapons, firearms, ammunitions, explosives, incendiary devices, or other dangerous goods and no refund of the cruise fare will be issued. Carnival will confiscate and turn over to the appropriate governmental authorities any of the above articles found on the Guest or his baggage. The Guest will be solely responsible for any and all damage and/or loss caused by his violation of this policy.

5. Carnival has the right without previous notice to cancel this contract at the port of embarkation or any time during the voyage and shall thereupon return to the Guest, if the Contract is completely canceled, his passage money, or, if the Contract is partially canceled, a proportionate part thereof. Under such circumstances, Carnival shall have no further liability for damages or compensation of any kind.

6. (a)The Guest warrants that he and those traveling with him are physically fit to travel at the time of embarkation and is required to notify Carnival in writing at the time of booking the cruise of any physical disability or medical condition which may require special assistance during the voyage. Failure to do so will release Carnival from any liability for loss, damages or other compensation arising from or related in any way to such disability or condition. Upon booking the cruise, guests who have special needs are required to contact Carnival's Special Needs Desk (305-599-2600 ext. 70025) to discuss the details of their special needs. Carnival reserves the right to require that any Guest, who is not self-sufficient, travel with a companion who shall take responsibility for any assistance needed during the voyage and in case of emergency.

(b) Carnival and the Master each reserves the right to refuse passage, disembark or confine to a stateroom any Guest whose physical or mental condition, or behavior would be considered in the sole opinion of the Captain and/or the ship's physician to constitute a risk to the Guest's own well-being or that of any other Guest or crew member. Passengers who will enter their third trimester(twenty seventh week) of pregnancy by the time of the voyage and infants less than four months old shall not be permitted to board the vessel. Carnival and the Master reserve the right to disembark any guest whose behavior affects the comfort, enjoyment, safety or well being of other guests or of any crew.

(c) Guest acknowledges that Carnival's vessels contain non-smoking sections. Guest agrees to refrain from smoking in those sections and agrees that Carnival has the right to disembark the Guest for failure to observe Carnival's non-smoking policy.

**Carnival®**

d) When traveling with a minor and both parents/legal guardians are not cruising, we strongly recommend bringing an original signed letter from the absent parent/guardian authorizing the minor to travel with you. This will expedite processing by the Department of Homeland Security. Please note that a letter to this effect is required if debarking with children in Mexico.

(e) Except as noted below, Guests are prohibited from bringing alcoholic beverages on Carnival's vessels for on board consumption. However, at the beginning of the cruise during embarkation day only, wine enthusiasts may bring fine wine or champagne on board. A $10 corkage fee per bottle will be charged should guests wish to consume this wine/champagne in the dining room, or a $14 corkage fee per bottle if consumed in the Supper Club. Prohibited alcoholic beverages confiscated in embarkation day will be discarded without compensation. Alcoholic beverages purchased in the vessel's gift shops or at a port of call will be retained by Carnival until the end of the voyage. Carnival reserves the right to refuse to serve alcohol to any passenger. Guest acknowledges that the minimum age permitted for the purchase, possession or consumption of alcoholic beverages aboard Carnival's vessels is twenty-one (21). Guest agrees to supervise all persons under age twenty-one (21) under Guest's charge to insure that they do not violate this, or any other, shipboard regulation. Guests who attempt to purchase alcohol by using false identification or the Sail & Sign card of a Guest who is twenty-one or older will be deemed in violation of this policy. Any Guest twenty-one or older who attempts to or purchases alcohol for any guest under twenty-one will also be deemed in violation of this policy. Guest agrees that Carnival has the right to disembark any guest who violates this policy and as well as any adults traveling with minors who violate this policy or any other shipboard regulation.

(f) Guests may bring a small quantity of non-alcoholic beverages at the beginning of the cruise during embarkation day only. Excessive quantities, as determined by Carnival, will be confiscated and discarded without compensation.

7. Carnival reserves the right to increase published fares without prior notice. In the event of an increase, the Guest has the option of accepting the increased fare or canceling reservations without penalty. Carnival reserves the right to use any substitute ship in the performance of this contract.

8. Reservations will be held until 30 minutes prior to departure. No refunds will be made in the event of "no shows", unused tickets, lost tickets, interruptions, partially used tickets, or cancellations received late or after the start of the cruise. A cancellation occurs when a stateroom is released and not simultaneously rebooked on the same sailing. Carnival strongly recommends the purchase of trip cancellation insurance from your travel agent. Cancellation charges for individual bookings will be assessed as listed below. For cancellation charges related to group bookings, partial ship charters or full ship charters refer to your charter contract or group booking agreement for terms and conditions.

| | DAYS PRIOR TO DEPARTURE DATE | CANCELLATION CHARGE (per guest) |
|---|---|---|
| 2, 3, 4 & 5 DAY CRUISES | Up to 61 days<br>60 to 30 days<br>29 to 8 days<br>7 days or less | None (except Cruises-To-Nowhere*)<br>Deposit**<br>50% of Total Fare<br>100% of Total Fare |
| 6, 7 & 8 DAY CRUISES | Up to 76 days<br>75 to 30 days<br>29 to 8 days<br>7 days or less | None<br>Deposit<br>50% of Total Fare<br>100% of Total Fare |
| ALASKA CRUISES, CRUISETOURS AND 10 DAY OR LONGER CRUISES | Up to 76 days<br>75 to 46 days<br>45 to 15 days<br>14 days or less | None<br>Deposit<br>50% of Total Fare<br>100% of Total Fare |

Total Fare is defined as Cruise Fare, Air Fare Supplement, Transfer Services and Pre-/Post-Cruise Vacation Packages.
* The deposit is non-refundable.
** For Cruises-To-Nowhere, the cancellation charge is 25% of Total Fare.

9. (a) The Vessel shall be entitled to leave and enter ports with or without pilots or tugs, to tow and assist other vessels in any circumstances, to return to or enter any port at the Master's discretion and for any purpose and to deviate in any direction or for any purpose from the direct or usual course, and to omit or change any or all port calls, arrival or departure times, with or without notice, for any reason whatsoever, including but not limited to safety, security, adverse weather, strikes, tides, hostilities, emergency debarkations of Guests or crew, or late air, sea, car or motor coach departures or arrivals, all such deviations being considered as forming part of and included in the proposed voyage. Carnival shall have no liability for any compensation or other damages in such circumstances.

10. (a) Guest agrees during the course of the voyage to follow the directions of the ship's Master, or his authorized officer. Guest further agrees not to solicit anyone on the vessel for any commercial or professional purposes. Guest agrees that any violation of this paragraph may subject guest to disembarkation.

(b) Guest agrees, in all ports of call, to return to the Vessel not less than 30 minutes before the scheduled departure time. Guest further acknowledges that shipboard and shore side clocks may have different times, but it is Guest's responsibility to return to the vessel so as not to miss vessel's departure. Any costs associated with transporting Guest to rejoin the vessel including, but not limited to, governmental fees, visa fees, subsistence, lodging, air fare, launch fare, car hire or agency fees shall be for the account of Guest.

(c) Carnival has a "zero tolerance" policy towards reports of any illegal activity or behavior by passengers or crew aboard its vessels. Guest agrees to comply with this policy and further acknowledges that Carnival will report any and all alleged instances of illegal activity or behavior to the appropriate law enforcement authorities.

11. The Guest shall be liable to and shall reimburse Carnival or the Master for any fines or penalties imposed on Carnival by any government, governmental agency or official, port or port official, for Guest's failure to observe or comply with local requirements in respect of immigration, border patrol, customs and excise, agriculture, health or any other government regulation whatsoever.

12. The Guest or Guest's estate shall be liable to and shall reimburse Carnival for all deviation expenses (including loss of revenue), damages to the Vessel, its furnishings, operations or equipment, or any property of Carnival caused directly or indirectly, in whole or in part, by any misconduct, willful or negligent act or omission on the part of the Guest or any minors traveling with Guest. The Guest or Guest's estate shall defend and indemnify Carnival and the Vessel, their servants and agents against liability which Carnival or the Vessel or such servants or agents may incur towards any person, company or Government for any damage to property, personal injury or death caused directly or indirectly, in whole or in part, by any misconduct, willful or negligent act or omission on the part of the Guest or minors traveling with Guest.

13. (a) Guest acknowledges that all Shore excursions/tours (whether conducted in the water, on land or by air), airline flights and ground transportation, as well as the ship's physician, nurse and on board concessions (including but not limited to, the gift shops, spa, beauty salon, fitness center, golf and art programs, video/snorkel concession) are either operated by or are independent contractors. Carnival neither supervises nor controls their actions, nor makes any representation either express or implied as to their suitability. Carnival, in arranging for the services called for by the physician or nurse, all on board concessions, all shore excursion/tour tickets, all pre and post cruise airline flights or other transportation off of the ship and its tenders, does so only as a convenience for the Guest and Guests are free to use or not use these services. Guest agrees that Carnival assumes no responsibility, does not guarantee performance and in no event shall be liable for any negligent or intentional acts or omissions, loss, damage, injury or delay to Guest and/or Guest's baggage, property or effects in connection with said services. Guests use the services of all independent contractors at the Guest's sole risk. Independent contractors are entitled to make a proper charge for any service performed with respect to a Guest.

(b) Guest acknowledges that the ship's masseuse, barber, hairdresser, manicurist, fitness or golf instructor, videographer, art auctioneer, gift shop personnel, wedding planners or other providers of personal services are employees of independent

contractors and Carnival is not responsible for their actions. Guest further acknowledges that although independent contractors or their employees may use signage or clothing which contain the name "Carnival" or other related trade names or logos, the independent contractor status remains unchanged. Independent contractors, their employees and assistants are not agents, servants or employees of Carnival and have no authority to act on behalf of Carnival.

14. (a) Carnival shall not be liable for any claims whatsoever for personal injury, illness or death of the guest, unless full particulars in writing are given to Carnival within 185 days after the date of the injury, event, illness or death giving rise to the claim. Suit to recover on any such claim shall not be maintainable unless filed within one year after the date of the injury, event, illness or death, and unless served on Carnival within 120 days after filing. Guest expressly waives all other potentially applicable state or federal limitations periods.

(b) Carnival shall not be liable for any claims whatsoever, other than for personal injury, illness or death of the Guest, unless full particulars in writing are given to Carnival within 30 days after the Guest is landed from the Vessel or in the case the Voyage is abandoned, within 30 days thereafter. Suit to recover on any claim whatsoever other than for personal injury, illness or death shall not be maintainable unless filed within six months after the date Guest is landed from the Vessel or in the case the Voyage is abandoned, within six months thereafter, and unless served upon Carnival within 120 days after filing. Guest expressly waives all other potentially applicable state or federal limitation periods for claims which, include but are not limited to, allegations concerning any and all civil rights, the ADA, trade practices and/or advertising.

(c) In consideration for the fare paid, it is agreed that Carnival shall not be held vicariously liable for the intentional or negligent acts of any persons not employed by Carnival nor for any intentional or negligent acts of Carnival's employees committed while off duty or outside the course and scope of their employment.

(d) In consideration for the fare paid, it is agreed that Carnival shall have no liability as a consequence of guest's use of ship's athletic or recreational equipment or as a consequence of guest's decision to participate in any athletic or recreational activity or event.

15. It is agreed by and between the Guest and Carnival that all disputes and matters whatsoever arising under, in connection with or incident to this Contract or the Guest's cruise, including travel to and from the vessel, shall be litigated, if at all, before the United States District Court for the Southern District of Florida in Miami, or as to those lawsuits to which the Federal Courts of the United States lack subject matter jurisdiction, before a court located in Miami-Dade County, Florida, U.S.A. to the exclusion of the Courts of any other county, state or country.

16. On cruises which neither embark, disembark nor call at any U.S. port, Carnival

**)(Carnival**®

shall be entitled to any and all liability limitations and immunities provided under the Athens Convention Relating to the Carriage of Passengers and Their Luggage by Sea of 1974, as well as the 1976 Protocol to the Convention Relating to the Carriage of Passengers and Their Luggage by Sea ("Athens Convention"), which limits Carnival's liability for death or personal injury of a passenger to no more than 46,666 Special Drawing Rights as defined therein (approximately U.S. $60,000 which fluctuates depending on daily exchange rate as printed in the Wall Street Journal), and all other limits for damage or loss to personal property.

17. (a) Carnival shall not be liable to the passenger for damages for emotional distress, mental suffering/anguish or psychological injury of any kind under any circumstances, except when such damages were caused by the negligence of Carnival and resulted from the same passenger sustaining actual physical injury, or having been at risk of actual physical injury, or when such damages are held to be intentionally inflicted by Carnival.

(b) In addition to all the restrictions and exemptions from liability provided in this Contract, Carnival shall have the benefit of all Statutes of the United States of America providing for limitation and exoneration from liability and the procedures provide thereby, including but not limited to Sections 4282, 4282A, 4283, 4284, 4285 and 4286 of the Revised Statutes of the United States of America (46 USCA Sections 182, 183, 183c(b), 183b, 184, 185 and 186). Nothing in this Contract is intended to nor shall it operate to limit or deprive Carnival or any such statutory limitation of or exoneration from liability under any applicable laws.

18. If the performance of the proposed voyage is hindered or prevented (or in the opinion of Carnival or the Master is likely to be hindered or prevented) by war, hostilities, blockage, ice, labor conflicts, strikes on board or ashore, restraint of Princes, Rulers or People, seizure under legal process, breakdown of the Vessel, congestion, docking difficulties or any other cause whatsoever or if Carnival or the Master considers that for any reason whatsoever, proceeding to, attempting to enter, or entering or remaining at the port of Guest's destination may expose the Vessel to risk or loss or damage or be likely to delay her, the Guest and his baggage may be landed at the port of embarkation or at any port or place at which the Vessel may call, at which time the responsibility of Carnival shall cease and this contract shall be deemed to have been fully performed, or if the Guest has not embarked, Carnival may cancel the proposed voyage without liability to refund passage money or fares paid in advance.

19. Carnival and the Master shall have liberty to comply with any orders, recommendations or directions whatsoever given by the Government or Department of any nation or by any person acting or purporting to act with the authority of such Government or Department or by any Committee or person having under the terms of the War Risks Insurance on the Vessel the right to give such orders, recommendations or directions, and if by reason of, and in compliance with any such orders, recommendations or directions anything is done or is not done the

**)) Carnival.**

same shall not be deemed a deviation or a breach of this contract. Disembarkation of any Guest or discharge of baggage in accordance with such orders, recommendations or directions shall constitute due and proper fulfillment of the obligation of Carnival under this Contract.

20. Carnival and the Vessel shall have a lien upon all baggage, money and other property whatsoever accompanying the Guest and the right to sell the same by public auction or otherwise for all sums whatsoever due from the Guest under this contract and for the costs and expenses of enforcing such lien and such sale.

21. Carnival and/or its promotional partners have the exclusive right to include photographic, video and other visual portrayals of Guest in any medium of any nature whatsoever for the purpose of trade, advertising, sales, publicity or otherwise, without compensation to Guest, and all rights, title and interest therein (including all worldwide copyrights therein) shall be Carnival's sole property, free from any claims by Guest or any person deriving any rights or interest from Guest.

22. This contract constitutes the entire agreement between Carnival and Guest and supercedes all other agreements, oral or written. Any alteration to any term of this contract must be in writing and signed by Carnival. Should any provision of this contract be contrary to or invalid by virtue of the law of the jurisdiction in which this contract is sought to be enforced or be so held by a court of competent jurisdiction, such provision(s) shall be deemed to be severed from the Contract and of no effect and all remaining provisions herein shall be in full force and effect and constitute the Contract of Carriage.

23. Guest hereby expressly agrees that he/she will not utilize any tape recording, video, or photograph(s) of himself/herself, any other guest, crew, or third party on board the vessel, or depicting the vessel, its design, equipment, or any part thereof whatsoever, for any commercial purpose or in any media broadcast, or for any other non-private use, without the express written consent of Carnival. Guest acknowledges that by boarding the vessel, at any time, Guest irrevocably agrees to this provision, which is a condition precedent to being permitted on board the vessel and can be enforced by any legal means, including, but not limited to, injunctive relief.

24. If guest is denied boarding, confined to a stateroom or disembarked from the vessel pursuant to any provision of this contract, including but not limited to paragraphs 2(c), 2(f), 6(b), 6(c), 6(e), 10(a), guest agrees:

    a. Carnival will not be liable for any refund of Cruise Fare, other compensation or any damages

    b. All rights under Carnival's Vacation Guarantee are forfeited. This forfeiture also applies to any guest who disembarks because another guest is disembarked.

**))Carnival**®

    c. Disembarkation and repatriation to the embarkation port or any other destination will be at guest's sole expense.

    d. To indemnify Carnival and that Carnival may charge Guest's on-board charge account for any and all expenses incurred by Carnival in relation to Guest's disembarkation and/or repatriation.

25. Guest agrees if Carnival incurs any expense or sustains any damage as delineated but not limited to paragraphs 2(a), 2(e), 10(b), 11, 12 that Carnival may charge Guest's on-board charge account for any expense incurred or damage sustained.

≋JS 44 (Rev. 11/05)　　　　　　　　　　CIVIL COVER SHEET　　07-20642

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

**I. (a) PLAINTIFFS**
MARGARET WILCOX

**DEFENDANTS**
CARNIVAL CORPORATION

CIV - HUCK

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant MIAMI-DADE
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
LIPCON, MARGULIES & ALSINA, P.A.
One Biscayne Tower, Suite 2480
2 South Biscayne Boulevard
Miami, Florida 33131
TEL (305) 373-3016

Attorneys (If Known)

MAGISTRATE JUDGE
SIMONTON

(d) Check County Where Action Arose: ☒ MIAMI-DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

DADE-07-CV-20642-CV-HUCK-SIMONTON

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☒ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability |  | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / **Habeas Corpus:** |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land |  / ☐ 530 General |  |  | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty |  |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other |  |  | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights |  |  |  |
|  | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition |  |  |  |

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. RELATED/RE-FILED CASE(S).** (See instructions second page):
a) Re-filed Case ☐ YES ☐ NO
b) Related Cases ☐ YES ☐ NO
JUDGE _____ DOCKET NUMBER _____

**VII. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity): Passenger Case Against Cruise Lines.

LENGTH OF TRIAL via 5 days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE
SIGNATURE OF ATTORNEY OF RECORD _____
DATE 3-9-07

FOR OFFICE USE ONLY
AMOUNT 350- RECEIPT # 956281 IFP ___